IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK R. WAUGAMAN, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| ) | Civil Action No. 08-1548 |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

CONTI, District Judge.

Pending before this court is an appeal from the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying the claims of Mark R. Waugaman ("plaintiff") for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381-83, and disability insurance benefits ("DIB") under Title II of the SSA, 42 U.S.C. §§ 401-33. Plaintiff asserts that the decision of the administrative law judge (the "ALJ") should be reversed because the decision is not supported by substantial evidence. Defendant asserts that the decision of the ALJ is supported by substantial evidence. The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The court will deny plaintiff's motion and grant defendant's motion because the decision of the ALJ is supported by substantial evidence.

**Procedural History**

On August 16, 2005, plaintiff filed applications for DIB and SSI alleging that his bipolar disorder, attention deficit disorder, and impulse control problems rendered him unable to work as of June 30, 2005.  (R. at 57-59, 265-68.)  Plaintiff's claims were denied on October 27, 2005.  (R. at 42-45, 270-74.)  Plaintiff requested and was granted a hearing before the ALJ, which was held on September 5, 2006.  (R. at 17, 47.)  Plaintiff, who was represented by counsel, testified at the hearing.  (R. at 308-31.)  A vocational expert (the "VE") also testified.  (Id.)  On January 24, 2007, the ALJ issued an unfavorable decision (R. at 17-25) and plaintiff timely filed a request for review with the Appeals Council.  (R. at 13.)  After a denial of the request on September 25, 2008, and having exhausted all administrative remedies, plaintiff filed this appeal.  (R. at 6-10.)

**Plaintiff's Background and Medical History**

At the time of the decision, plaintiff was a twenty-nine-year-old man, who received a tenth grade education.  (R. at 57, 99.)  In the past, he worked as a stocker and packer, laborer, cashier, and dishwasher for short periods.  (R. at 101.)

Early Mental Health History

Plaintiff began seeing a psychologist at the age of nine in 1986.  (R. at 120.)  In 1987, he was hospitalized for psychiatric reasons.  (Id.)  Plaintiff was in psychiatric treatment or was hospitalized for most of the time period between 1989 and 1992.  In 1989, he was diagnosed with conduct disorder, solitary aggressive type; rule out bipolar affective disorder; and parent/child problems. (R. at 256.)  Plaintiff was treated with lithium during this period.  (R. at 122).

Recent mental health history

On September 7, 2002, an evaluation of plaintiff was performed by Dr. Kerry Brace who acknowledged that plaintiff had bipolar disorder, which was in partial remission and possibly a conduct disorder, in remission. (R. at 128.)  She further indicated that his prognosis was fair if he stayed on his medications. (R. at 129).[1]

On May 24, 2005, plaintiff indicated to Dr. Joel Last that he had stopped taking his Seroquel[2] due to its sedative side effects.  (R. at 169.)  As a result, plaintiff complained of mood swings, increasing irritability and agitation.  (Id.)  Dr. Last reported that plaintiff had a depressed mood, a somewhat irritable affect, and a cognition that was grossly intact with adequate judgment and insight.  (Id.)  Dr. Last prescribed Topomax[3] and assessed a Global Assessment of Functioning ("GAF") of 35.[4]  (R. at 170.)  After this initial meeting, plaintiff was placed on lithium to treat his bipolar disorder.  (R. at 163-64.)

---

[1] On May 31, 2002, plaintiff filed applications for DIB and SSI, which were denied on October 9, 2002. (R. 35, 38-41).

[2] "Seroquel is indicated for the treatment of acute manic episodes associated with bipolar I." Physicians' Desk Reference 691 (62nd ed. 2008).

[3] "Topomax is a medication used to treat migraine headaches. The common side effects are fatigue, taste loss, and difficulty with attention/concentration." Physicians' Desk Reference 2406 (62nd ed. 2008).

[4] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest.  A GAF score of between 31-40 denotes severe impairment.  The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000).  An individual with a GAF score of 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning;" of 50 may have "[s]erious symptoms (e.g., suicidal ideation . . . .)" or "impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job);" of 40 may have "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood; of 30 may have behavior "considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment (e.g., . . . suicidal preoccupation)" or "inability to function in almost all areas . . .;  of 20 "[s]ome danger of hurting self or others . . . or occasionally fails to maintain minimal personal hygiene . . . or gross impairment in communication . . . ." Id.

Plaintiff voluntarily admitted himself to psychiatric hospitalization on August 26, 2005, after losing his job due to a fight with his supervisor and having a subsequent altercation with his girlfriend. (R. at 199-200.) Plaintiff remained hospitalized from August 26 to August 30, 2005 for depression and suicidal thoughts. (Id.) Dr. Saghr Ahmad indicated that plaintiff had been medicated with lithium but was non-compliant; plaintiff had "minimal compliance with medication." (Id.) At admission, plaintiff was assessed with a GAF of 35 and at discharge with a GAF of 45. (Id.) At discharge, a mental status exam revealed no suicidal or homicidal thoughts, good self-esteem, and goal-directed thoughts. (Id.) Plaintiff was continued on the Depakote[5] and Lexapro[6] used for treatment during the hospitalization. (Id.)

On August 31 2005, Dr. Last completed a medical evaluation form explaining his first meetings with plaintiff. (R. at 163-64). Dr Last indicated that plaintiff was scheduled for an appointment on August 25, 2005, but did not attend. (R. at 164.) On September 1, 2005, Dr. Last completed an Employability Assessment Form, indicating that plaintiff was temporarily disabled from July 1, 2005 to July 1, 2006 due to his bipolar disorder. (R. at 206.)

On September 22, 2005, plaintiff began treatment with Dr. Carla Cox, a psychiatrist. (R. at 189-93.) An intake nurse noted that plaintiff suffered from bipolar I disorder, impulse control disorder, and ADHD. (R. at 198.) At their first interview Dr. Cox noted that plaintiff was pleasant and cooperative, had a normal range of affect, and had no current suicidal/homicidal

---

[5] Depakote is used for the treatment of the manic episodes associated with bipolar disorder. "A manic episode is a distinct period of abnormally and persistently elevated, expansive, or irritable mood." Physicians' Desk Reference 429 (62nd ed. 2008).

[6] Lexapro is an antidepressant used for treatment of major depression disorder (MDD), generalized anxiety disorder (GAD); in early phases of the treatment some patients experience worsening of their depression and suicide risk, especially in young adults (up to 24 years old). Side effects for MDD may include nausea, diarrhea, insomnia, constipation, and for GAD may be headache, nausea, vomiting, even abdominal pain, insomnia, somnolence. Physicians' Desk Reference 1175-79 (62nd ed. 2008).

ideations. (R. at 191.)  Plaintiff indicated that he wanted to return to work part-time. (R. at 190.)  Dr. Cox assessed a GAF of 45. (R. at 192.)  At the conclusion of the appointment, Dr. Cox recommended that plaintiff stop drinking alcohol and taper his use of caffeine. (R. at 193.)  Plaintiff indicated that he was unwilling to stop his caffeine use.  (Id.)  Dr. Cox noted plaintiff had started a trial of Wellbutrin[7] and Depakote five days earlier and was "tolerating it well thus far."  (R. at 192.)

On October 5, 2005, Dr. Douglas Schiller, a state agency psychologist, reviewed plaintiff's medical history and determined that his documented problems did not meet a listing. (R. at 171.)  Dr. Schiller evaluated plaintiff's limitations and indicated that, at most, plaintiff had moderate restrictions in remembering, understanding, and carrying out detailed instructions; performing activities within a schedule; and accepting instructions and responding well to criticism.  (R. at 184-85.)  Dr. Schiller noted that plaintiff could meet the basic mental demands of competitive work on a sustained basis despite his impairment.  (R. at 186.)

Between January and March 2006, Dr. Cox's notes indicated that plaintiff's mood generally improved and was "pretty stable" and that he was compliant with medication.  (R. at 216-23.)  Plaintiff denied side effects from his medication.  (R. at 217, 219, 221, 223).  At each appointment during that time frame, Dr. Cox indicated that plaintiff had appropriate affect and mood and normal cognition.  (Id.)  In March 2006, plaintiff indicated that he found work as a machinist and obtained a driver's permit.  (R. at 218).  He lost his machinist job in May 2006 due to absences from bronchitis.  (R. at 216). From May through August 2006, plaintiff stopped complying with his medications.  (R. at 210, 212, 214.)  During this period, plaintiff "stormed

---

[7] Wellbutrin is an antidepressant used for the treatment of major depressive disorder. Physicians' Desk Reference 1611-12 (62nd ed. 2008).

out" of a therapy session. (R. at 212). He also had an altercation with his girlfriend and with the police while being arrested. He attempted to smash furniture and threw objects. The incident caused his girlfriend to seek a protection from abuse order against him. (R. at 210.)

The last psychiatric evaluation that plaintiff received was requested by his attorney at the hearing before the ALJ. (R. at 329.) The ALJ left the record open in order for plaintiff to submit additional medical records and have another psychiatric evaluation conducted. (R. at 316, 329-30.) On December 8, 2006, Dr. Last examined plaintiff. Dr. Last noted that plaintiff was "somewhat depressed." (R. at 260-61.) He further indicated that plaintiff was unable to handle stress in the workplace and had poor concentration, which would give plaintiff difficulty in following directions. (R. at 261.) Dr. Last, however, assessed that plaintiff, at most, would have moderate limitations in the workplace due to his mental impairments. (R. at 263-64.)

Evidence submitted after the ALJ's decision

On August 11, 2008, plaintiff's counsel submitted a letter and a report from Dr. Cox dated May 1, 2007 to the Appeals Council. (R. at 286-307). Dr. Cox indicated that plaintiff's prognosis was "fair with long term treatment, poor without treatment, high risk of relapse." (R. at 292.) She opined that plaintiff met the requirements for Listing 12.04 for his bipolar disorder. (R. at 293.) In her report, she noted marked limitations in the areas of social functioning, concentration, persistence, and pace. (R. at 303). She also noted four or more episodes of decompensation in the past two years. (Id.) Finally, she indicated poor or no ability to perform most work-related activities. (R. at 305-06).

**Standard of Review**

An administrative law judge's findings, subsequently adopted by the Commissioner, that deny benefits to a claimant are subject to judicial review. 42 U.S.C.A. § 405(g). This court must determine whether the administrative law judge's findings of fact are supported by substantial evidence. Id. Substantial evidence may be defined as somewhat less than a preponderance of evidence, but more than a scintilla of evidence. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). If a "'reasonable mind might accept [such evidence] as adequate,'" it is substantial. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Under this standard, this court cannot substitute its own conclusions for those of the administrative law judge. Burns v. Burnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).

**Discussion**

To establish disability under the SSA, a plaintiff must demonstrate his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The nature and extent of these mental or physical impairments must be so severe that they preclude the plaintiff not only from returning to his or her previous employment but also from acquiring substantial gainful work that exists in the national economy, considering his age, education, and prior work experience. 42 U.S.C. § 423(d)(2)(A).

The administrative law judge follows a five-step sequential evaluation for determining disability. The five-step process evaluates the following elements: (1) whether the claimant is

-7-

currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the impairment meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app.1; (4) if not, whether the claimant's impairment prevents him from performing his past work; (5) and if not, whether the claimant can perform any other work in the national economy, given the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520, 416.920.  The burden of proof with respect to steps one through four lies with the claimant, while the defendant bears the burden of proof with respect to step five.  Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

In the instant case, the ALJ determined that: (1) plaintiff has not engaged in substantial gainful activity since the alleged disability onset date; (2) he suffers from the following severe impairments: an attention deficit hyperactivity disorder, a bipolar II disorder, an impulse control disorder, and a personality disorder; (3) these impairments do not satisfy or medically equal one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) plaintiff has no past relevant work experience; and (5) plaintiff has the residual functional capacity ("RFC") to perform a wide range of work at all levels of exertion as found in the national economy.  (R. at 17-25.)

Plaintiff raises four arguments in opposition of the ALJ's findings with respect to step five of the sequential evaluation.  First, plaintiff argues that the Appeals Council improperly rejected the opinion of Dr. Cox that was submitted after the ALJ's opinion was rendered. Second, plaintiff asserts that the ALJ improperly determined plaintiff's credibility, and in turn, incorrectly determined plaintiff's RFC.  In plaintiff's third argument, he contends that the ALJ failed to analyze properly plaintiff's impairments within the listings.  Plaintiff's final argument that the ALJ relied upon an incomplete hypothetical question to the VE is intertwined with the

third issue – whether the ALJ properly determined plaintiff's RFC. Each of plaintiff's arguments will be addressed.

I.      The after-decision report of Dr. Cox

On July 24, 2008, the Appeals Council sent to plaintiff's counsel requested copies of exhibits and duplicate recordings and noted that, "[y]ou may send us more evidence or a statement about the fact and the law in this case." (R. at 11.) The Appeals Council, however, noted that "any more evidence must be <u>new</u> *and* material to the issues considered in the hearing decision dated January 24, 2007." (<u>Id.</u> (underlined emphasis added, italicized emphasis in original).) The Appeals Council ultimately chose not to review the decision of the ALJ even though additional evidence was submitted by plaintiff's counsel. (R. at 6.) Upon notice to plaintiff of its decision, the Appeals Council stated that it would have reviewed plaintiff's case in the event that, *inter alia*, it had received "new and material evidence and the decision was contrary to the weight of all the evidence [then] in the record." (<u>Id.</u>) The Appeals Council stated:

> We looked at a report on a psychiatric evaluation conducted on September 22, 2005 by Carla Cox, M.D. However, that evidence was part of the record examined by the Administrative Law Judge prior to the issuance of the unfavorable hearing decision (5 pages Exhibit 8F).
>
> We also looked at the Physician's Report, Mental Impairment Questionnaire and functional capacity assessment provided by Dr. Cox on May, 1, 2007 (17 pages) and acknowledge that the information contained in them does not appear compatible with the ability to perform substantial gainful activity. However, most of the mental status examination findings of record from 2002, 2005, and 2006 are relatively unremarkable (Exhibits 2F; 5F-9; 6F-6, 8), including those attended by 45-50% [sic] GAF scores (11F-3, 5,7,9,11,13). Accordingly, we conclude that the Administrative Law Judge's finding that you are not disabled under our program rules appears to be supported by substantial evidence of record.

-9-

(R. at 7.) The decision of the ALJ was the final decision in this case and the court must determine whether the after-decision evidence warrants a remand to the ALJ for consideration.

Concerning the issue whether the report of Dr. Cox is "new" evidence that should be considered, the court looks to the language of sentence six of section 405(g) of the SSA. The sentence provides that the court may remand the case to the Commissioner of Social Security "only upon a showing that there is *new* evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); Szubak v. Sec'y of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Section 405(g) requires that to support a "new evidence" remand, the "new" evidence must not be merely cumulative of what is already in the record. Guthrie v. Barnhart, No. 02-2207, at 8 (W.D. Pa. March 19, 2004) (Docket No. 10) (citing Szubak, 745 F.2d at 833). For the evidence to "material" it must be relevant and probative. Szubak, 745 F.2d at 833. An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. Id. Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. Id.

Focusing on the good cause requirement, the court in Szubak noted that there must be "some justification for the failure to acquire and present such evidence to the Secretary" or else the submission of additional evidence after the opinion could be an "end-run method of appealing an adverse ruling by the Secretary." Id. at 834.

Plaintiff presented no evidence about why the report of Dr. Cox was not submitted in a timely fashion. Dr. Cox had been treating plaintiff since September 2005 and the hearing before

the ALJ was held over a year later without a report from Dr. Cox being obtained. The ALJ left the record open after the hearing in order for plaintiff to undergo an evaluation by Dr. Last that was requested by plaintiff's counsel. Plaintiff did not request additional time to obtain a report from Dr. Cox. Plaintiff did not obtain a report from Dr. Cox until May 2007 - months after the unfavorable decision of the ALJ - and did not submit the report to the Appeals Counsel until August 11, 2008. Without an explanation for the delay in obtaining and submitting the report, the court can only find that the factors indicating the propriety of a remand based on new evidence have not been met.[8]

II.      The ALJ's determination that plaintiff did not meet Listings 12.02, 12.04, and 12.08

Plaintiff argues that in determining that he did not meet the Listings 12.02, 12.04, and 12.08, the ALJ ignored reports that plaintiff had been assessed with a GAF of 35-45, which is indicative of serious impairment in functioning. The ALJ determined that the assessments of a GAF in the 35-45 range were not supported by objective evidence and noted that the GAF scale is subjective. He stated that the mental status evaluations by Dr. Last and Dr. Cox revealed no evidence of "psychosis, obsessions, compulsions, delusions, or suicidal/homicidal ideation." (R. at 23.) He noted that Dr. Last's medical source statement from December 2006 indicated no more than moderate limitations in any area of functioning. (Id.) The ALJ indicated that plaintiff did not require further hospitalization for his condition since August 2005, two months after his alleged onset date. (R. at 20.) Finally, the ALJ relied on the findings of the state agency

---

[8] While plaintiff's new evidence does not meet the grounds for remand under 42 U.S.C. § 405(g), it appears to cover a period after the denial of benefits by the ALJ and may be introduced as evidence in connection with a new claim to support benefits.

psychologist, Dr. Schiller, who concluded that plaintiff did not meet or equal a listed impairment and retained the RFC to perform a wide range of work at all levels. (Id.)

GAF scores, while constituting evidence to be considered, do not mandate a particular disability determination under the SSA:

> The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.

65 Fed. Reg. 50746, 50764-65. While under certain circumstances a GAF score can be considered evidence of disability, a GAF score, standing alone, does not evidence an impairment seriously interfering with a claimant's ability to work. GAF scores may indicate problems that do not necessarily relate to the ability to hold a job. See Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002); Power v. Astrue, 2009 WL 578478, at *8 (W.D.Pa. Mar. 5, 2009); see also Lopez v. Barnhart, 78 Fed. App'x 675, 678 (10th Cir. 2003); Zachary v. Barnhart, 94 Fed. App'x 817, 819 (10th Cir. 2004); Wilkins v. Barnhart, 69 Fed. App'x 775, 780 (7th Cir. 2003).

The ALJ's determination that plaintiff's mental impairments did not meet a listing was supported by substantial evidence of record. Plaintiff's May 2005 mental status exam was essentially normal, with only some depression and irritability due to plaintiff ceasing to take his medications. (R. at 169.) Plaintiff had not required inpatient hospital confinement for his condition since August 2005, approximately two months after his alleged onset date. (R. at 190.) In September 2005, plaintiff's treating psychiatrist, Dr. Cox, examined plaintiff and determined plaintiff's mental status to be coherent, goal directed with a normal range of affect, and no evidence of manic or psychotic symptoms. (R. at 191.) Plaintiff was cognitively intact and

within normal limits of speech, thought rate and pattern. (Id.) In December 2006, Dr. Last reported that plaintiff was alert and oriented with no evidence of psychosis, obsessions, compulsions, delusions, flight of ideas, looseness of associations, or suicidal/homicidal ideation, and indicated that plaintiff's condition had not resulted in more than a moderate limitation in any area of functioning. (R. at 261.)

Dr. Schiller reviewed plaintiff's records in October 2005 and assessed no more than moderate limitations brought on by plaintiff's mental impairments. (R. at 171, 184-85, 221-22.) Several further examinations with Dr. Cox, while plaintiff was compliant with his medication, indicated that he had normal mood, affect, and cognition. (R. at 216-23.) In December 2006, Dr. Last reported that plaintiff had no more than moderate limitations in his functioning. (R. at 261.) Since this objective medical evidence conflicts with or is not directly correlative to a GAF score in the 35-45 range, the weight given by the ALJ to this evidence in his determination that plaintiff did not meet a listing was supported by substantial evidence or record.

III.     The ALJ's determination of plaintiff's RFC

Plaintiff also argues that the ALJ did not properly consider his testimony when making the RFC assessment. Plaintiff testified that he did not believe that he could work outside of his home due to his bipolar disorder. (R. at 314.) He testified to temper control issues and problems concentrating. (R. at 323.) Plaintiff also testified that his bipolar disorder caused him to have issues with supervisors and other employees, which would usually end in him quitting his job. (R. at 314.) He testified to having problems with his girlfriend that involved in police intervention. (R. at 316.)

"'Residual functional capacity'[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (quoting Hartranft v. Apfel, 181 F.3d 358, 359 n.1 (3d Cir. 1999)). A claimant's RFC represents the most, not the least, that a person can do despite his or her limitations. See Cooper v. Barnhart, 2008 WL 2433194, at *2 n.4 (E.D.Pa., June 12, 2008) (citing 20 C.F.R. § 416.945(a)). In determining a person's RFC, an administrative law judge must consider all evidence of record. 20 C.F.R. §§ 404.1520, 416.920. Although an administrative law judge can weigh the credibility of the evidence when making a RFC determination, he or she must give some indication of the evidence which is rejected and the reasons for doing so. Id. As the court stated in Burnett, "'[i]n the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" Id. at 121 (quoting Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

The ALJ must give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. See Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir.1993); Welch v. Heckler, 808 F.2d 264, 270 (3d Cir.1986). Subjective complaints need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. Smith, 637 F.2d at 972; Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971). Where a claimant's testimony is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's complaints without contrary medical evidence. Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985); see Chrupcala v. Heckler, 829 F.2d 1269, 1275-76 (3d Cir. 1987); Akers v. Callahan, 997 F.Supp. 648, 658 (W.D. Pa. 1998).

The ALJ discounted plaintiff's testimony that he was incapable of working outside of the home in light of the contradictory medical evidence from Dr. Cox, Dr. Last, Dr. Schiller, and plaintiff's testimony regarding his daily activities. In his rejection, the ALJ relied partially on the testimony of plaintiff regarding his daily activities. (R. at 21). Plaintiff testified that he was able to care independently for his personal needs, watched television, played video games, went camping, visited his sister in Virginia, occasionally dined out in restaurants, visited with friends, and performed various household chores like cooking, cleaning, doing laundry, and grocery shopping. (R. at 317-21.)

The ALJ relied on the lack of objective medical evidence supporting the severity of plaintiff's ailments. He noted several mental status examinations by Dr. Cox and Dr. Last between September 2005 and December 2006, which indicated moderate impairments. (R. at 22-23.) None of the treating physicians' or consulting physicians' reports noted that plaintiff had more than moderate limitations in any area of functioning. (R. at 22-23.) The ALJ used this evidence to discount Dr. Last's opinion that plaintiff was temporarily incapacitated from July 2005 to July 2006 and plaintiff's testimony.

The ALJ, however, did not totally discredit plaintiff's stated limitations. The ALJ credited the testimony of plaintiff regarding his problems interacting with supervisors and coworkers to the extent that he acknowledged that plaintiff would be limited to only occasional interaction with supervisors, coworkers, and members of the general public. (R. at 327.) Based upon the record, there is substantial evidence of record to support the ALJ's decision that plaintiff was capable of performing work in the national economy.

III.     Hypothetical question

As discussed above, substantial evidence of record supports the ALJ's decision to give less weight to plaintiff's testimony that he was incapable of working. When questioning the VE at the administrative hearing, the ALJ posed a hypothetical question to determine whether jobs existed in the national economy that plaintiff could perform given his limitations. (R. at 56-58.) The ALJ set the limitations to encompass a person of the same age, education, and past work experience as plaintiff, who was not limited exertionally, but who was limited to simple, routine, repetitive tasks not performed in a fast pace environment, involving only simple work-related decisions and relatively few work place changes; and no more than occasional interaction with supervisors, coworkers, and the general public . (R. at 327.)  Given the limitations, the VE opined that there was a sufficient number of jobs in the national economy to accommodate a person with those medical limitations. (R. at 327-28.)

Having considered plaintiff's arguments, including the weight given to the medical opinions, and having found substantial evidence supports the ALJ's conclusions regarding plaintiff's limitations, the hypothetical relied upon was not deficient. See Johnson, 529 F.3d at 529 (when a hypothetical accurately portrays a claimant's impairments, the hypothetical is not deficient; not every alleged impairment is required be included in a hypothetical).

**Conclusion**

The ALJ's decision to deny plaintiff DIB and SSI is supported by substantial evidence of record. Therefore, defendant's motion for summary judgment (Docket No. 8) shall be granted and plaintiff's motion for summary judgment (Docket No. 6) shall be denied.

-17-

        By the court,

        <u>/s/ JOY FLOWERS CONTI</u>
        Joy Flowers Conti
        United States District Judge

Dated: July 22, 2009